IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH L. PANG,

Petitioner, No. CIV S-10-431 JAM CHS

vs.

JAMES SHOMIG, Warden,

Respondent.

FINDINGS AND RECOMMENDATIONS

_______________________________/

I. INTRODUCTION

Kenneth L. Pang, a state prisoner, proceeds pro se with a first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. At issue is the sufficiency of evidence supporting his conviction in the Butte County Superior Court, case number CM018940, for assault with a deadly weapon and an accompanying enhancement for street gang activity.

II. FACTUAL AND PROCEDURAL BACKGROUND

On April 12, 2003, Pang and several others were involved in an altercation in a 7-Eleven parking lot in Chico. Evidence at trial showed that Pang stabbed Tyson Luttenbacher once in the abdomen and fled. Police apprehended Pang a few blocks from the scene and recovered the knife used to stab Luttenbacher.

A jury found Pang guilty of assault with a deadly weapon with enhancements for using a deadly weapon, personally inflicting great bodily injury, and committing the offense for the benefit of a street gang. For this and other unrelated charged offenses not at issue here,[1] the court sentenced him to an aggregate term of 17 years and eight months in state prison. In an unpublished opinion on appeal, the California Court of Appeal, Third District, modified the judgment to strike the enhancement for use of a deadly weapon but otherwise affirmed the convictions and sentence.[2] *See People v. Pang*, No. C047579, 2008 WL 3893035 (Cal. Ct. App. 3rd Dist. 2008). The California Supreme Court denied a petition for review.

III. GROUNDS FOR RELIEF

Pang claims that insufficient evidence at trial supported (A) his assault conviction; and (B) the accompanying enhancement for street gang activity.

IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under the AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

---

[1] In connection with unrelated charged incidents not at issue here, the jury convicted Pang of misdemeanor assault; he also pleaded guilty to battery for the benefit of a street gang.

[2] The California Court of Appeal held the enhancement was improperly imposed under state law because "use of a deadly weapon is an element of assault with a deadly weapon." *People v. Pang*, *supra*, slip op. at 11. Because sentencing on this enhancement had been stayed, Pang's aggregate sentence was not affected.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919. The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## V. DISCUSSION

The Due Process Clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

The *Jackson* standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.) The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v.*

*Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Under the AEDPA, this standard is applied with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005). This court must ask "whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

A. Assault with a Deadly Weapon

Section 245, subdivision (a)(1), of the California Penal Code prohibits "an assault upon a person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury...." "All that is required to sustain a conviction of assault with a deadly weapon is proof that there was an assault, that it was with a deadly weapon, and that the defendant intended to commit a violent injury on another." *People v. Birch*, 3 Cal.App.3d 167, 177 (1969) (abrogated on other grounds by *People v. Williams*, 26 Cal.4th 779, 787-788 (2001)).[3]

In support of his challenge to the sufficiency of the evidence of his assault conviction, Pang argues that a rational jury could not have found his response was unlawful. Under California law, "[f]or an assault to be in self-defense, the defendant must actually and reasonably believe in the need to defend." *People v. Jefferson*, 119 Cal.App.4th 508, 518 (3rd Dist. 2004). "Although the belief in the need to defend must be objectively reasonable, a jury must consider what 'would appear to be necessary to a reasonable person in a similar situation and with similar knowledge....'" *Id*. (citing CALJIC No. 5.50). "[T]he jury must consider all the 'facts and circumstances... in determining whether the defendant acted in a manner in which a reasonable man would act in protecting his own life or bodily safety.'" *Jefferson*, 119 Cal.App.4th at 518 (quoting *People v. Moore*, 43 Cal.2d 517, 528 (1954)). "Although the

---

[3] In *Williams*, the California Supreme Court clarified that the intent for assault requires that the defendant "be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." *People v. Williams*, 26 Cal.4th at 787-788. The abrogation is unimportant here as Pang's mental state is not at issue.

ultimate test of reasonableness is objective, in determining whether a reasonable person in defendant's position would have believed in the need to defend, the jury must consider all of the relevant circumstances in which defendant found [himself]." Jefferson, 119 Cal.App.4th at 518 (quoting *People v. Humphrey*, 13 Cal. 4th 1073, 1083 (1996)). With the applicable law in mind, the evidence adduced at Pang's trial is examined.

In the early morning hours of April 12, 2003, Jennifer Horner and a group of her friends were celebrating her 21st birthday in downtown Chico. While the group was at Mr. Lucky's Bar, one member of the group, Albert Alvarado, was approached by two men who inquired of him who he was and where he was from. Alvarado interpreted the inquiry as a question regarding gang affiliation. When Alvarado responded that he was not a member of a gang, and that he had just moved to the area from Orange County, one of the men stated, "Oh, this is Norteños. Fuck the south siders." (RT at 625-26.) Alvarado pointed out the two men, who were now standing with others, to his friend Refuqio Jasso. One of the men said to Alvarado and Jasso, "What's up, what are you going to do about it[?]" (RT at 628-29.) Alvarado and his friends exited the bar at a bouncer's request.

Outside the bar, approximately five of the men formed a circle around Alvarado's group. One of Alvarado's friends, Christina Becker, confronted the men, yelled at them, and accused them of wanting to "jump" them. Horner also confronted the men and attempted to push them away. Horner testified that she, Alvarado, and Jasso were pushed to the ground and kicked by the men; she described the scene as chaotic. According to Alvarado, one of the men pushed Horner; Alavardo pushed the man back and then another man hit Alvarado, causing him to fall down. Jasso, and Alvarado sustained bruises, scrapes, and scratches; Jasso had a "knot" behind his ear and Alvarado had a "gash" on his face.

Following this altercation, Alvarado and Jasso observed the men driving by in a car. The car stopped in the parking lot of a 7-Eleven and approximately five men, one of whom was Pang, got out of the car. Horner approached Pang and started yelling at him; Pang responded

that he was going to "kick her ass." (RT at 479.) Horner attempted to hit or slap Pang but did not make contact with his body. Horner's brother-in-law, Tyson Luttenbacher, approached Horner and attempted to push her away from Pang. As Luttenbacher attempted to push Horner away from Pang, Luttenbacher felt a blow to his stomach, turned toward Pang, and realized he had been stabbed. Horner saw Pang running away while holding a knife, which he held up in the air at one point. Jasso and another witness, Shannon Finney, also identified Pang as the individual who had stabbed Luttenbacher. One of the witnesses reported to police that someone said the words "Norte, Norte" prior to the stabbing (RT at 676-77), although none of the eyewitnesses testified to this at trial.

Officer Matthew Seipert, a member of the Chico Police Department's canine unit, responded to a call about a fight in the early morning hours of April 12, 2003. He saw three Hispanic males running and ordered the leader, who was Pang, to stop. Pang did not immediately comply but stopped after Seipert threatened to release his dog. Seipert retraced Pang's route and, near a location where Pang had turned his body to the left, located a knife later determined to have Luttenbacher's blood on it.

Later that evening, Detective Michael Nelson of the gang unit interviewed Pang. Nelson observed a Mr. Lucky's stamp on Pang's hand as well as fresh injuries on his forefinger and the middle finger on his right hand. When asked about the cause of the injury to his knuckles, Pang laughed and stated he did not know.

At trial, Pang testified he feared the men who approached him just before he stabbed Luttenbacher were going to assault him. One of the men stated, "You better have a gun." Pang testified he punched the man on his right after that man tried to come at him. After this, the man in the middle (Luttenbacher) came towards him, and Pang stabbed him because he felt threatened.

On direct review, the California Court of Appeal held that the jury's rejection of Pang's self-defense theory of the case was reasonable and supported by substantial evidence at

trial. The court held, in relevant part:

> [T]he jury could have concluded that a person in defendant's position could not have reasonably believed he needed to defend himself with a knife against the unarmed birthday celebrants, especially against Luttenbacher, who had not made an aggressive move against defendant but was merely trying to pull Horner away.
>
> The evidence was also sufficient to show defendant had no subjective belief in the need to defend himself. Defendant testified he felt threatened and punched one of the birthday celebrants who tried to come at him. There was contrary evidence, however, upon which the jury could reasonably rely to discredit defendant's testimony. Defendant's group had prevailed in the earlier altercation. When Horner yelled at him, he did not move away. No one tried to hit defendant except possibly Horner. Defendant testified that Horner missed him with what he characterized as a "girl slap." As someone in defendant's group chanted "Norte, Norte," defendant stabbed an unarmed man who made no aggressive movement toward him. Thus, the jury could reasonably conclude defendant did not believe he needed to defend himself.
>
> Defendant asserts that the prosecution failed to carry its burden because the birthday celebrants were intoxicated and angry and crossed the street to confront defendant. He argues the birthday celebrants were the aggressors and he had the right to defend himself. Defendant's argument fails to take into account, however, the lack of an assault by the birthday celebrants, except possibly the ineffectual "girl slap" by Horner. Also, defendant used a knife in what, at most, was a potential fistfight. No right to stab an unarmed person arose.

*People v. Pang*, *supra*, slip op. at 4 -5.

To support this claim in his federal petition, Pang parses the record for evidence that the jury could have used to support a self-defense theory of the case. Even assuming the record can be interpreted in a manner that supports his claim of self-defense, however, it cannot be said that the state court's rejection of this claim was an unreasonable application of *Jackson* and *Winship* to the facts of the case. Pang's jury was fully instructed with the law on self-defense (RT at 1309-12) and apparently chose not to believe either that he actually felt the need to defend himself or that a reasonable person in a similar situation would have believed in the need to defend. Such an interpretation was entirely reasonable based on the evidence summarized above. A federal court sitting in habeas corpus "must respect the province of the jury to determine the

credibility of witnesses, resolve evidentiary conflicts, and draw inferences from proven facts by assuming the jury resolved all conflicts in a manner that supports the verdict." *Jones v. Woods*, 114 F.3d 1002, 1008 (9th Cir. 1997) (quoting *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995)). Sufficient evidence supported the conviction and this claim is without merit.

B. Gang Enhancement

California law provides a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, *or* assist in any criminal conduct by gang members...." Cal. Pen. Code § 186.22(b)(1) (emphasis added). To find that a crime is gang-related, there must be more than the defendant's criminal history and gang affiliations. *People v. Martinez*, 116 Cal.App.4th 753, 761 (1st Dist. 2004).

Both past and present offenses have some tendency in reason to show the group's primary activity and therefore fall within the general rule of admissibility. *People v. Sengpadychith*, 26 Cal.4th 316, 323 (2001). "Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime." *People v. Morales*, 112 Cal.App.4th 1176, 1198 (4th Dist. 2003). In addition, because the elements of section 186.22(b)(1) are stated as alternatives, if the offense was committed in association with a gang, for example, the prosecution need not prove the crime was also committed for the benefit or at the direction of the gang. *See Morales*, 112 Cal.App.4th at 1198.

In *Morales*, the California Court of Appeal observed regarding section 186.22(b)(1):

> [T]he typical close case is one in which one gang member, acting alone, commits a crime. Admittedly, it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this.

*Morales*, 112 Cal.App.4th at 1198. In the present case, as in *Morales*, "the jury could reasonably

infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." *Id*. Nevertheless, additional evidence at Pang's trial supported the gang enhancement.

Officer Donald Finkbiner, a gang enforcement officer for the Chico Police Department since March of 2000 and a police officer since 1990, testified regarding his knowledge of the Norteños, a criminal street gang. Finkbiner opined that the Norteños' primary purpose is criminal activity, including assaults with deadly weapons, robbery, drive-by shootings, and arson. Finkbiner based his opinions on his experience investigating gang-related offenses committed by the Norteños, his contacts with approximately 700 Norteños members and associates, his prior investigation of at least 100 gang-related cases, and his contacts with other law enforcement officers and gang conferences and training sessions he has attended. Finkbiner opined that Pang's tattoos were consistent with membership in the Norteños gang, and that the instant offense was committed for the benefit of the Norteños street gang.

Evidence was admitted at trial of past criminal activities by Norteños members, including Pang. In particular, there was evidence of a prior, unrelated incident in Gridley in June of 2002 in which Pang (wearing red) beat and kicked an individual who was dressed in blue. Finkbiner opined that this prior incident in Gridley evidenced Pang's gang membership with the Norteños.

As previously set forth, one of the witnesses reported to police that someone said the words "Norte, Norte" at some time prior to the stabbing. Additionally, evidence established that when Pang stabbed Luttenbacher, he was in the company of men who had said to Alvarado "this is Norteños," which Alvarado perceived to be a gang-related comment.

Based on all these facts, a jury finding that the instant offense was committed for the benefit of the Norteños street gang was certainly reasonable and it follows that the California Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of

*Jackson* or *Winship* to the facts of this case.[4]

VI. CONCLUSION

For the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be denied; and

2. A certificate of appealability not issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time waives the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). Any reply to the objections shall be filed and served within seven days after service of the objections.

---

[4] In rejecting this claim on direct review, the California Court of Appeal reasoned:

> Defendant... was with his fellow gang members who beat up the birthday celebrants, even if there was no evidence he hit or kicked anyone. The jury could infer that defendant's gang returned to the scene to further intimidate and harass the birthday celebrants and enhance their gang's criminal reputation. Likewise, the jury could conclude defendant had the specific intent to benefit his gang when he stabbed an unarmed man, while someone else chanted "Norte, Norte."

*People v. Pang*, *supra*, 2008 WL 3893035, at 5.

DATED: January 17, 2012

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE